Per Curiam.
The bill states, that a tract of land of 4,800 acres, lying in the county of Williamson, was, on the *14th day of March, in the year 1786, granted by the State of North Carolina to the defendant, Joseph Blythe, who afterwards gave his nephew, Thomas Spratt, 640 acres, part thereof, being the same land that is described and contained in a deed executed by said Spratt to the complainant; that in testimony of said, gift, said Joseph sealed and delivered to the said Spratt a deed, whereby he conveyed to him, his heirs and assigns forever, or some other writing sealed and delivered, whereby he covenanted and obliged himself to convey the said tract of land to said Spratt, his heirs and assigns forever; which said deed or writing said Spratt brought with him to this State, in the year 1806, and showed the same to divers persons, particularly to a William Dooly and the *194 complainant, who, before that time, had been well acquainted with the handwriting of said Blythe subscribed thereto, and knew that the name Joseph Blythe, subscribed thereto, was the proper handwriting of the said Blythe. Spratt sold the said land to one Gordon for $100, and was paid, and gave his bond in the penalty of $2,000 to make a title. Gordon afterwards, for the consideration of' $380, assigned the said bond to the complainant, who called upon Spratt for a title. And he, on the 24th day of January, 1806, executed a deed in fee simple for the same, as described in the bill, which deed was duly proven in Williamson County Court, April term, 1806. The bill further states, that the complainant, immediately after the execution of said deed to him by Spratt, took possession of the land, cultivated and improved the same, and hath lived thereon ever since; which is the southwest corner of the tract of 4,800 acres. The answer of Blythe denies that he ever gave, or intended to give his said nephew Spratt, or any other person, the land lying in the southwest corner of his tract described in his bill, or any instrument of writing to that purport. He admits that he gave to his nephew some memorandum * for some other lands in the northeast corner of his tract, and that to the best of his recollection, his intention in giving the memorandum was not to convey a fee simple to his said nephew, but that he should .hold during his life so much of the said 640 acres in the northeast corner of said tract as he could occupy and cultivate. And further answering, saith, he does not know Dooly or the complainant, nor does he know or believe that they ever saw him write. The deposition of William McDaniel states, that about the middle of December, 1810, in the town of Columbia, in the State of South Carolina, he heard a conversation between the complainant and the defendant Blythe, when the complainant inquired of him, whether he, said Blythe, had not conveyed to his nephew, Thomas Spratt, 640 acres of land lying in the southwest corner of said Blythe’s original tract, and waters of Duck River, county of Williamson and. State of Tennessee ? And said Joseph replied he had given an instrument of writing conveying or giving’ to Thomas Spratt and his children the said land; but he did not expect for said Thomas Spratt to sell the same. And Blythe seemed displeased at his nephew Thomas’s selling the land so conveyed, and said Blythe gave the complainant very little satisfaction *195 concerning the same. William Dooly’s deposition states, that in the month of January, 1806, he was called upon by Isaac Crow to lay off 640 acres from Thomas Spratt to him, said Crow; that when on or near said land, Spratt pulled out a paper to ascertain where said land lay, which paper, as well as his memory served him, was a grant or deed of conveyance, or some other writing directing them to a poplar and dogwood corner. They then proceeded to run off 640 acres of land, in the southwest corner of said Blythe’s original tract, lying on the head of West Harpeth and waters of Duck River, which appears by the deed of Spratt to Crow, which deed he witnessed after. * Deponent further states, that some years after this Crow came to his house, and inquired of him if he recollected seeing or reading the power of attorney or instrument of writing made from Blythe to Spratt; that deponent answered that he did see and read some instrument of writing as above stated, directing them where to begin their survey that they made, but he does not retain what that instrument was; and further, from said writings and parties’ directions, he went on and made said survey. Herring, the other subscribing witness to the deed of Spratt to Crow, says that Spratt showed a paper, saying it was a title from his uncle; does not remember the particulars, but took it, from what was said, to be a title from the uncle; on being questioned whether the paper looked like print or writing, he said a writing. Further, said Crow took possession of the land immediately, and lived on it ever since; has cleared about 100 acres ; says Spratt sold to Gordon, but the land not run off till Crow purchased ; Gordon had no deed, but a bond for title; that the contract to Gordon was several years before the deed to Crow ; that Gordon gave Spratt a horse worth $100 or $120, and got from Crow ¿6100 for the land. Smith says that Crow said he gave 25 cents per acre for the land.- Allen, a witness, says that when Spratt first came out, he brought with him a conditional deed from his uncle for land in the northeast corner, if he settled and improved the same in two years; the deed was to Spratt and his heirs, or to Spratt for life, and after to his children ; that Spratt went to South Carolina and returned in the fall of 1805, when he had another writing for land in the southwest corner; said it was a deed from his uncle; that he examined the signature, but did not believe it to be Blythe’s hand* writing. Blythe’s signature to his answer was then showed to the *196 witness by the counsel as a signature to a deed, and he was asked if that was Blythe’s handwriting? He replied * he did not think it was. Spratt, a witness, says he was in North Carolina lately, since the commencement of this suit; saw a deed from his uncle to his brother Thomas Spratt, which is for land in the northeast corner, 640 acres, to him and his heirs, if he settled in two years ; says his father is settled in the southeast corner of Blythe’s tract, and is Blythe’s agent, and that he has promised this land to some of the family, but does not expect any of it himself. Blythe’s signature to his answer was shown to this witness in the same manner as to Allen, the same question asked, and the same answer given. These are the principal allegations of the bill and answer, and the material parts of the testimony given in upon this cause. The allegation in the answer, that the defendant Blythe gave no instrument of writing to his nephew, Thomas Spratt, for land in the southwest corner of this tract, is positively contradicted by the testimony of McDaniel, who says that he heard Blythe say he had given an instrument of writing conveying or giving to Thomas Spratt and his children the said land; the other allegations in the answer, that the memorandum given by the defendant to his nephew was not intended to convey a fee simple to him, but that he should have during his life so much of the 640 acres as he could occupy and cultivate, is disproved as to the quantity of interest by the witness Spratt, who we'nt to his brother’s house in North Carolina for the purpose of procuring the deed, the only one contended by the defendant’s counsel to have been given by him, and which they wish to consist with this allegation and identify with the memorandum there mentioned ; he says his brother showed him the deed; that it read, as well as he recollects, to him and his heirs, if settled within two years. The testimony of Dooly, the surveyor, corroborates and supports the testimony of McDaniel, both as to the situation of the land and the existence of a conveyance for it. A paper was pulled out by Spratt * for the purpose of ascertaining where the land lay, and what part was the particular part of the 4,800 acres to be deeded to Crow. The grant could not have ascertained this, for that would have only showed the situation of the whole tract in reference to the surrounding country, not the position of a part to be carved out of the tract, in reference to the balance, and distin *197 guish it therefrom. It also presents the idea of a conveyance, for if the paper was used for the purpose of ascertaining a particular part of a larger tract, the grant being inadequate to this purpose, it follows that it was a deed, taking into view existing circumstances, especially that of a gift from an uncle to a nephew, the donor wealthy, the donee the reverse, and the particular occasion of using the paper as a direction or rule by which to draw another deed. McDaniel’s testimony is also corroborated by the witness Allen, who saw this paper for land in the southwest corner, and purported to be a deed from the defendant to his nephew', as the nephew said ; he only examined the signature, and did not believe it to be Blythe’s handwriting. But in this last point, however, he might well be mistaken, from his knowledge exhibited in court of the defendant’s handwriting, with regard to the signature in the answer. This witness also proves the existence of the deed for land in the northeast corner, lately in possession of Thomas Spratt; that he saw this deed in 1803 or 1804 ; that the nephew went after this into South Carolina, and returned in the fall of 1805, when he had the paper or second deed before mentioned. The court therefore infers that the defendant, Blythe, did give a deed in fee simple to his .nephew, Thomas Spratt, for 640 acres of land, lying in the southwest corner of his tract of 4,800 acres, as described in the bill, and that the same hath been sufficiently proved by the degree of proof required by the rules of this court. But it is argued by the defendant’s counsel that, notwithstanding, the complainant is not entitled to relief, for * that the statement in the bill is indefinite, not charging in particular, or exclusively, whether a deed was given by Blythe to Spratt, or a covenant or other paper purporting to be a deed, and delivered, and obligating himself to convey 640 acres of land; and relied upon Newland, 162, as supporting the objection, which says, it is incumbent upon the plaintiff to prove the same agreement which he hath set forth in his bill; that, if the agreement proved by him be of a different sort, equity will not execute it. The authority quoted does not support the objection taken, for here the proof is that one of the positions or agreements stated in the bill was made, and the objection is that several are made by the bill. We do not recollect at present of any parallel case. But the exception to the above general rule, contained in the same book, pp. .163, 164, the case of Mortimer and Archard, 2 *198 Ves. junior, 243, will throw some light on the subject, and furnish an example of what the court ought to .do on 'the present occasion. There the plaintiff, having built a house on the estate of the two defendants, brought a bill for the specific performance of an agreement for a new lease for 21 years. The terms of granting this lease, proved for the plaintiff by the testimony of a single witness, were different from those set up by the bill. The defendants, in their answers, stated the agreement to be different both from that proved and that set up by the bill. The chancellor held that though in strictness the plaintiff’s bill ought to be dismissed, yet, as there had been an execution of some agreement between the parties, the court was to inquire into the single fact, what was the agreement. And he directed a lease to be settled pursuant to the agreement confessed in the answers. So here the complainant hath settled the land, lived on it 10 years, cleared 100 acres, made other improvements, and executed one of the agreements in the bill mentioned; and we will not therefore dismiss the bill. It is to be ob-. served that * the case under consideration is much stronger for the complainant than the one quoted. Decree that the land in the bill, mentioned and described in the deed of conveyance from the defendant Spratt to Isaac Crow, be divested out of all persons defendants to this bill, and be vested in the complainants, or such of them as are the heirs of Isaac Crow, deceased, or are entitled under his will.
A decree was drawn by counsel, and presented as usual to the court next morning, and was read over to the court in presence of the defendant’s counsel, and, being amended and made conformable to the foregoing opinion of the court, was passed and recorded, and signed the morning after. This is the usual course of drawing, amending, passing, and recording decrees in this court, after which they are, in contemplation of our practice, deemed to be enrolled. And during the term may be impeached by petition for rehearing, but after the term by a bill of review, or by a bill in the nature thereof. This the court, in divers instances, hath declared to be the course to be pursued, but being not stated in any special case, is mentioned here generally for the preservation of the cause itself, and to make it known generally to practitioners.
See King’s Digest, 9803.